50166, 50167. HOLSOMBACK v. AKINS et al.; and vice versa.

MARSHALL, Judge.

Appellant seeks recovery against decedent's estate on a check signed by decedent and tendered to him prior to her death.

In his affidavit in support of his motion for summary judgment, appellant states the following: Appellant's father died in August, 1969. Just prior to his death, in the presence of appellant's wife and stepmother, his father told appellant that he had not left a will but had made arrangements for appellant to receive part of his estate. Appellant's stepmother then told appellant not to worry, that appellant would get his share of his father's estate. The following month after his father's death, appellant received a check from his stepmother, blank in every respect (date, payee, and amount) except that it was signed by his stepmother. In a later discussion of the matter with appellant, his stepmother instructed him to make the check payable to himself in the amount of $7,000 and to present it after her death at which time her estate would honor it. She told him that the $7,000 was payment of his share of his father's estate. At the same time she asked appellant to quitclaim some of his father's property to her, but the record does not show whether or not he did so. Appellant held onto the check, and, on December 4, 1970, his stepmother died. The check was presented to the drawee bank on December 10, 1970. Payment on the check was refused because payment had been stopped on the check in October, 1969, by a Mrs. Godwin.

Mrs. Godwin states in her affidavit that she was an employee of the Bonnie Restaurant, which was owned and operated by the appellant's stepmother, and that she had authority to cash checks on and manage the bank account of the restaurant on which the check in question was drawn. She further states that she stopped payment on the check on instructions from the decedent stepmother. The bank account was in the name of the Bonnie Restaurant and appellant's father and stepmother. An

affidavit of the head teller of the drawee bank verifies that Mrs. Godwin had authority to cash and deposit funds in the restaurant's bank account and that she was the person who, in October, 1969, stopped payment of the check in question.

Appellant brought this action against his stepmother's executrix and the various beneficiaries of his stepmother's will, after his demand against them for $7,000 was refused. All defendants below answered and moved for summary judgments. Appellant also moved for summary judgment. The trial court denied the appellant's motion and granted defendant's motions except that of the executrix, Nell Akins, which was denied. Appellant appeals the granting of other defendants' motions and the denial of his motion, as certified (case no. 50166). The defendant executrix cross appeals the denial of her motion as certified (case no. 50167). *Held:*

1. "A check does not of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn (Code Ann. § 109A-3—409, former Code § 14-1707; *McIntire v. Raskin,* 173 Ga. 746 (161 SE 363)), but is merely an order upon a bank to pay from the drawer's account. It may be revoked at any time by the drawer before it has been certified, accepted or paid by the bank (*Aiken Bag Corp. v. McLeod,* 89 Ga. App. 737 (81 SE2d 215); *Bank of Hamilton v. Williams,* 146 Ga. 96 (90 SE 718)), and is revoked by operation of law 10 days after the death of the drawer although the drawee bank is not liable where it has in good faith honored such instrument without knowledge of the depositor's death. Code Ann. § 109A-4—405 (former Code § 13-2040)." *Lambeth v. Lewis,* 114 Ga. App. 191 (150 SE2d 462).

2. The check involved here was not revoked by operation of law because it was presented to the drawee bank within ten days after decedent's death. See Code § 109A-4—405 (2).

3. Was the check revoked by the drawer prior to being paid? There is no question that the drawer decedent did not herself stop payment on the check. However, Mrs. Godwin states, under oath, that she was instructed by the decedent to stop payment on the check. Even though Mrs.

Godwin is a party to the action and a beneficiary of the decedent's will, we find no exception under Code Ann. § 38-1603 (as last amended by Ga. L. 1953, Nov. Sess., pp. 319, 320) (the "Dead-man Statute") which makes her *incompetent* as a witness to testify as to such instruction from decedent. See *Elder v. Hewitt,* 33 Ga. App. 410 (1) (126 SE 848). Nevertheless, this instruction from decedent is *inadmissible* because it is hearsay and does not come within the exception of Code § 38-309 because the declaration is not against the interest of the deceased declarant. See *Rabun v. Wynn,* 209 Ga. 80 (2) (70 SE2d 745); *Higgins v. Trentham,* 186 Ga. 264 (1) (197 SE 862); *Foster Lumber Co. v. Sykes,* 45 Ga. App. 826 (6) (166 SE 61); 11 EGL 501-504, Evidence, §§ 103-105.

Nor may Mrs. Godwin claim that her authority to manage the same bank account on which the check in question is drawn authorized her to stop payment on the decedent's check. She was not "a person claiming an interest in the account" within the meaning of Code § 109A-4—405 (2) since the payment was stopped in October 1969, over a year before the decedent's death. See also the analogous situation where one joint tenant of a bank account was not authorized to stop payment of a check drawn by the other joint tenant on same bank account. Brown v. Eastman Nat. Bank (Okla.), 291 P2d 828 (55 ALR2d 971).

Nevertheless, even though we conclude that the check was not revoked, the appellant here does not seek payment of the check itself because he has not joined the drawee bank as a party. Instead, he seeks enforcement of its underlying debt either on the theory that it was a binding gift or a contract. "[T]he payee 'is remitted to any underlying claim he may have against the decedent.' 11 Am. Jur. 2d 661, Bills and Notes, § 590; In Re Bakri's Estate, 109 N. Y. S. 2d 654." *Lambeth v. Lewis,* 114 Ga. App. 191, 192, supra.

4. Did the decedent stepmother's actions constitute a gift to appellant, of which the check is evidence? We must conclude that the check did not constitute a complete inter vivos gift since delivery is not complete until the ckeck is paid by the bank. 38 AmJur2d 869, Gifts § 65. And death of the donor automatically revokes the incomplete

gift. See *Felder v. Felder,* 71 Ga. App. 860, 866 (32 SE2d 550), overruling *Elders v. Griner,* 40 Ga. App. 649 (4a) (150 SE 857).

5. Appellant's strongest contention is that the check was given in consideration of his relinquishment of his share of his father's estate, and, therefore, a contract was formed with decedent which is binding on her estate. This contract obligation is not revoked by the promisor's death. Code § 113-1525. See e.g. *Allen v. Confederate Publishing Co.,* 121 Ga. 773 (1) (49 SE 782); *Young v. Lewis,* 70 Ga. App. 627 (29 SE2d 267). In such a case "the check may in a proper action be used as evidence in support of the payee's claim of indebtedness against the decedent but not as evidence of the indebtedness itself." *Lambeth v. Lewis,* 114 Ga. App. 191, 192, supra. See also *Grimes v. Elliott,* 40 App. 739 (1) (151 SE 536).

Can appellant prove the existence of the contract in spite of the "Dead-man Statute," Code § 38-1603, supra? Section I of that statute provides in pertinent part that a party to the action shall be competent to testify except: "1. Where any suit shall be . . . defended by . . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . . deceased person as to transactions or communications with such . . . deceased person . . ." This statute would eliminate the testimony of appellant since he is the "opposite party" and, in effect, would eliminate from evidence all facts which can be proved only by his affidavit. See, e.g., *Powell v. Powell,* 151 Ga. 533 (1) (107 SE 520); *Sivell v. Hogan,* 115 Ga. 667 (3) (42 SE 151); *Odum v. Rutledge,* 16 Ga. App. 350 (6) (85 SE 361).

However, the record shows that appellant's claim is not wholly dependent upon his own testimony of the transaction with his stepmother. There is other evidence of independent facts, not made incompetent by Code § 38-1603, which, if otherwise admissible, tend to support appellant's claim that decedent did contract with appellant to pay him his share of his father's estate. See e.g. *Holmes v. Maddox,* 175 Ga. 365 (165 SE 92); *Snow v. Snow,* 71 Ga. App. 316 (3) (30 SE2d 823). For example, the wife of appellant submitted an affidavit in which she swears that decedent told appellant that she "would see

that he [appellant] got his part of the estate of [his father]." The affidavit of Mrs. Godwin admits the existence of the blank check, that it was signed by decedent, and tendered to plaintiff on September 8, 1969, shortly after appellant's father's death. The record also contains two unsigned quitclaim instruments drawn up for appellant's signature in favor of decedent. There may be more independent facts showing a contract, but these alone are sufficient at least to make a question of fact of the existence of a contract between appellant and decedent and the extent of the decedent's obligation thereunder, if any. Whether appellant was entitled to a share of his father's estate and whether, in fact, he did relinquish his claim for that share in exchange for the defendant's blank check are factual issues to be resolved by the finder of fact. Since there remain issues of material fact, appellant's motion for summary judgment against all defendants below was properly denied, as was the motion of defendant executrix, Nell Akins.

6. Appellant's final assertion of error is that the trial court erred in granting the motion for summary judgment of the remaining defendants, beneficiaries under the will, and dismissing the action as to them. Code § 113-1506 provides: "Contribution by heirs to payment of debts. —If the estate shall have been distributed to the heirs at law without notice of an existing debt, the creditor may compel them to contribute pro rata to the payment of his debt." Contrary to the contentions of the beneficiaries, the record shows that the decedent's estate has been partially distributed. In her deposition, the executrix states that some of the decedent's assets have been distributed but that she does not know the amounts distributed to whom and what assets remain for the payment of appellant's claim should it be found meritorious. Under these circumstances, appellant's claim for contribution may not be decided as a matter of law.

*In case no. 50166 the order of the trial court denying appellant's motion for summary judgment is affirmed, and the order granting the named defendants' motions for summary judgment is reversed. In case no. 50167 the order of the trial court denying the motion for summary judgment of the executrix, Nell Akins, is affirmed. Bell, C.*

*J., and Webb, J., concur.*

SUBMITTED FEBRUARY 3, 1975 — DECIDED APRIL 11, 1975.

*Harl C. Duffey, Jr.,* for appellant.
*G. Fred Bostick,* for appellee.